### NEW ENGLAND DAIRIES, Inc., v. WICKARD, Secretary of Agriculture.

#### Civil Action No. 186.

District Court, D. Vermont.

Aug. 31, 1943.

A. Pearley Feen, of Burlington, Vt., for plaintiff.

Joseph A. McNamara, U. S. Atty., of Burlington, Vt., John S. L. Yost, Sp. Asst. to Atty. Gen., Department of Justice, and Jesse L. Cook, Sr. Atty., Office of the Solicitor, U. S. Department of Agriculture, of Washington, D. C., for defendant.

LEAMY, District Judge.

This action is brought to review the ruling made by the Secretary of Agriculture

upon a petition filed by the plaintiff pursuant to the provisions of the Agricultural Marketing Agreement Act of 1937, Sec. 8c(15) (A), 7 U.S.C.A. § 608c(15) (A). The complaint was filed in this Court under Sec. 8c(15) (B) of the said act for the purpose of determining whether the Secretary's denial of plaintiff's petition is in accordance with law.

The plaintiff, a cooperative association, is a Vermont corporation formed in 1931, with its principal place of business in Boston. It was organized for the purpose of acting as a central marketing agency for milk. Its members comprise cooperative associations of milk producers and individual producers. Membership is effected by means of a written contract. The plaintiff owns and operates a substantial number of plants in the so-called New England milk shed where it receives from producers, milk for marketing in the Greater Boston market, under the order which will be hereinafter mentioned.

The Burlington Cooperative Milk Products Company, Inc., a cooperative association, hereinafter referred to as "Products", is a Vermont Corporation, organized in 1918, with its principal place of business at Burlington, Vermont. It is engaged in marketing in Burlington and its immediate vicinity, milk which it receives from its producer members. It is not, and never has been, a member of plaintiff, and no contract similar to the contract between plaintiff and its members exists between plaintiff and Products.

The Burlington Cooperative Creamery Association, Inc., a cooperative association, hereinafter referred to as "Creamery", is a Vermont Corporation, organized in 1934, with its principal place of business in Burlington, Vermont. It also is engaged in marketing milk which it receives from its producer members. It is a member of plaintiff and has executed a membership contract with it. Its milk is handled by plaintiff for sale in the Boston market.

Both Products and Creamery had the same treasurer, although otherwise each of these corporations had its own officers and directors. Each maintained separate books of account and other records.

The plant involved is located in Burlington, Vermont. It is owned by Farmer's Realty Company, Inc., a Vermont corporation organized in 1926. The Realty Company leases the plant to Products which alone operates it. Both Products and Creamery did business and received milk from their producer members in this plant. Complete operations of the plant were conducted by, and were in charge of, the same general manager, including the keeping of the accounts of the producer members of both companies. All milk coming to this plant from producers of both corporations was received and marketed under the supervision of the same general manager. This plant was approved by health authorities as a plant from which milk could be shipped for sale as milk in the Boston market.

The producer members of both Products and Creamery delivered their milk at the plant and when the milk was received it was deposited in the same tank and so intermingled that thereafter it was impossible to separate the milk belonging to one corporation from that belonging to the other. Products performed all of the physical handling services of the milk of both corporations. Creamery paid Products for the handling services the sum of 15 cents per hundred pounds. The plaintiff paid Creamery the sum of 23 cents per hundred pounds, which nets Creamery 8 cents profit on the handling of each hundred pounds.

Products sold milk only in Burlington and vicinity during the period involved. At times its sales exceeded its receipts from members and it would then purchase milk from the plaintiff out of the milk which had been delivered to the plant for Creamery.

Creamery made savings in the handling charges which were returned to its producers in the form of bonus payments. Products also had an income from the sale of skim milk. Thus both Products and Creamery always paid their producers the same price for milk and both companies always returned the same profits to their producers.

This method of operation of Products and Creamery described above was in effect from September 1, 1937, to January 15, 1939, the period of time involved in this case. In fact since the organization of Creamery in 1934 the plan of business described herein had been maintained and continued up to and during the time above mentioned.

From February 9, 1936, to August 1, 1936, the Market Administrator in connection with an audit of the books of Creamery examined the books and records of Products, and at various times from August 1, 1937, to January 15, 1939, he caused

examinations of the books and records of both corporations to be made.

The plaintiff is undisputably a handler of the products of Creamery under the provisions of Order No. 4 as amended, and pursuant to the provisions thereof filed its reports with the Market Administrator. These reports included only the milk which it had received from its members, both association members and individual producer members. These reports are subject to verification by the Market Administrator and have from time to time been verified by him through auditors attached to his office. Pursuant to the examination of the books and records of Products and Creamery made by the Market Administrator, adjustments in the producer settlement account of the plaintiff were issued on September 3, 1938. These adjustments covered each of the pay periods from September, 1937, through March, 1938. Copies of the invoices issued by the Administrator to the plaintiff showing the adjustments in the producer settlement account of the plaintiff with respect to the milk of Products and Creamery were in the form of Exhibit 13, a part of the record.

On July 3, 1939, the Market Administrator rendered bills to the plaintiff in the aggregate amount of $9914.08 as the amount due to the Producers Settlement Fund from plaintiff on account of milk handled by Products and on the same day the Administrator rendered bills to the plaintiff in the aggregate amount of $514.-36 as the amount due from the plaintiff to the Administrator as administration charges on account of milk handled by Products. These bills were directed to the plaintiff and were with respect to all milk received at the plant by Products from its own producer members. The milk received from members of Creamery was properly accounted for by the plaintiff and is not involved in this case. In other words the Market Administrator ruled that solely by reason of the intermingling of the milk of Products with that of Creamery, that the plaintiff was a handler of the milk of Products and therefore was obliged to report and account for all milk received by Products from its own producer members and was obliged to pay thereon for the benefit of the Producers Settlement Fund and for Administration charges.

This ruling was sustained on appeal by the Secretary of Agriculture and it is to obtain relief from the latter's ruling that this action was instituted.

A portion of the facts presented at the administrative hearing was introduced by stipulation between the parties and the balance by the testimony of Fred C. Fiske, general manager of the Burlington plant, who was the plaintiff's witness and the only witness at the hearing.

The statute involved is the Agricultural Marketing Agreement Act of 1937, 7 U.S. C.A. § 601 et seq., hereinafter referred to as the "Act". The order involved in the present case is Order No. 4, as amended, regulating the handling of milk in the Greater Boston marketing area, issued by the Secretary of Agriculture pursuant to the powers conferred upon him by the Act. Order No. 4 was originally issued effective February 9, 1936, and Amendment No. 1 to the order was issued effective August 1, 1937. Order No. 4, as so amended, will hereafter be referred to as the "order". This order was in effect from September 1, 1937, to January 15, 1939, the period involved in the present case.

The order defines the terms "producer" and "handler" Art. 1, Sec. 1, paragraphs 5 and 6. As authorized by Sec. 8c(7) (c) and Sec. 10(b) of the Act, provision is made for the selection of an agency, known as a Market Administrator, to administer the terms and provisions of the order, and for the payment by each handler of his pro rata share of the expense of such administration. Order, Art. 1, Sec. 1, Par. 7; Art. II; Art. X. Handlers are required, as authorized by section 8d(1) of the Act, to make periodic reports to the Market Administrator. Order, Art. V.

Other pertinent regulatory provisions contained in the order are those which fix the value of milk according to its use by each handler; establish a uniform price for milk to be paid by all handlers to all producers, determined by dividing the total of use values for all handlers by the total quantity of milk delivered to all handlers by all producers and establish a producer settlement fund in the hands of the Market Administrator, for the equalization, by payments to such fund or withdrawals therefrom by handlers of the cost of milk to all handlers according to the use made by the individual handler of the milk handled by him.

The only issue to be determined here is whether the Secretary's ruling of November 30, 1939, denying the relief sought by plaintiff and dismissing its petition, is in accordance with law. It should be added

that the plaintiff raises no question as to the validity of the Act nor as to the regularity of the issuance of the order and amendments.

■ The scope of review by this Court is limited to determining whether the ruling of the Secretary is in accordance with law, for, under section 8c(15) (A) of the Act: " * * * The Secretary shall make a ruling * * * which shall be final, if in accordance with law." And a long line of cases has already established the rule that if the Secretary's findings are supported by substantial evidence before him, they should not be disturbed by the Court even though, upon a consideration of all of the evidence, the Court might reach a different conclusion. Indeed the Supreme Court has admonished us that interpretations of a statute by officers who, under the statute, act in administering it as specialists advised by experts must be accorded considerable weight by the Courts. Yet in our hesitancy to infringe upon the Secretary's powers we cannot escape the responsibility of determining whether he has gone beyond the limits set by Congress and by himself.

The facts are simple and may be summarized briefly as follows.

The producer members of Products deliver their milk to Products for sale in the Burlington area only and Products receives it for that purpose only. It has no license to market milk in the Greater Boston area. It has no contractual relationship whatsoever with the plaintiff.

The producer members of creamery deliver their milk to Creamery for sale in the Greater Boston area and Creamery receives it for that purpose, and markets it in that area through the plaintiff of which it is a member through the usual form of contract.

Occasionally Products buys from Creamery through the plaintiff, for sale in the Burlington area. Neither Creamery nor the plaintiff ever buy from Products and no more milk in quantity goes from the plant to Boston through Creamery and the plaintiff than is delivered to Creamery by its producer members.

The milk which Products receives from its members and which Creamery receives from its members is intermingled in the same vat.

■ On this set of facts and solely because of the intermingling, the Secretary has ruled that the plaintiff is a handler of the milk of Products and sells the latter's milk in the Boston area and must therefore account to the Producer Settlement Fund for all of the milk received by Products at the plant, even though all of the milk sold by Products is sold in the Burlington area.

I cannot agree.

Under Article I, Section I, paragraphs 5 and 6, the Secretary defines a producer as any person producing milk delivered to a handler at a plant approved by a health authority for the receiving of milk for sale in the marketing area. And he defines a handler as a person engaged in the handling of milk or cream received at an approved plant for similar sale.

At no time did the members of Products deliver milk to the plaintiff at the plant in question for sale in the Boston area. They delivered milk only to Products for sale in the Burlington area. At no time did the plaintiff receive milk either from Products or from the latter's members for sale in the Boston area. The plaintiff received milk only from Creamery for sale in the Boston area. The plaintiff had contractual relationship only with Creamery. It had no such relationship with Products and the mere intermingling alone cannot create a contractual relationship where none existed in fact. Nor does the intermingling make the plaintiff a handler of the milk of Products under the definition of "handler" as prescribed by the Secretary. It would be equally as equitable for the Secretary to claim that because Farmer Jones' new hired hand on his first trip to Burlington delivered the Jones milk to the plant in question instead of to a plant on the opposite side of the city where it should have gone, that the plaintiff was a handler of the Jones milk and liable to account for it to the Producer Settlement Fund.

The Secretary in his brief urges the point "that the entire operation of the plant, though maintained as two corporations, was in reality but one enterprise set up for the purpose of evading the order through the medium of a bookkeeping process." The simple answer to this claim is that the record is barren of any evidence of that fact or of any evidence from which there could be any such inference. Indeed the meager evidence on this question is directly to the contrary. All of these corporations were organized before the Act of 1937 and all but Creamery were organ-

ized before the enactment of the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq. And the undisputed testimony of Mr. Fiske is that Creamery was organized in 1934 to furnish a market for producers who had no market for their milk in Burlington. There is no evidence of any intent by anybody to evade the order, nor that the methods used were a "device" to violate the order or any part thereof.

In fact for a period of about eighteen months the Administrator was fully aware of the procedure being followed at the plant and apparently made no complaint.

The Secretary also urges that in deciding as he did, the Administrator was merely seeking a clear dividing line between milk which was handled for marketing in the area and milk which was not "and that records were not kept in a manner which allowed a computation of the sources of particular quantities of milk actually marketed in Burlington and vicinity and quantities actually marketed through plaintiff in the Boston market."

Although we are concerned here only with the legality of the decision and not with the motive underlying it, the answer again is that there is nothing in the record to reveal how the records were kept or what they disclosed and did not disclose. It seems fair to assume however that Products had a record of the amount of milk which it received from its producers, and which it bought from Creamery through the plaintiff, and the amount which it sold in Burlington, and that Creamery had a record of the amount which it received from its producers and the amount which it turned over to the plaintiff for sale in the Boston area.

It would seem that equitable procedure would have been a determination first as to whether or not Products as a handler was subject to regulation under the order.

But although the Act furnishes ample means to determine that question, yet there was no such determination and the question presented here is whether or not the plaintiff must account to the producer settlement fund for milk which was sold in Burlington by Products.

The purpose of the order is to fix and equalize the minimum prices to be paid producers for milk sold to handlers and disposed of by the latter in the marketing area, and so far as the quantity and kind of milk entering the Boston market from this plant is concerned, it is difficult to see how physical segregation creates any different situation than formerly existed. Products still sells the milk of its producer members in Burlington and if its sales exceed its supply it can buy from Creamery for sale in Burlington. What is left goes to Boston, just as it did before.

But if physical segregation is to be required then it must be brought about other than by imposing the provisions of the order upon producers who do not deliver or sell milk in the Boston market and other than by imposing upon a Boston handler the obligation to account for milk which it has never seen or touched, which never reached the Boston market and with the producers of which it had no contractual relationship whatsoever.

The ruling of the Secretary is not in accordance with the law and is set aside.

Submit order.